William RIGBY et al.,
Plaintiffs-Appellants,

v.

BEECH AIRCRAFT COMPANY, a
corporation, Defendant-Appellee.

No. 75–1700.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 18, 1976.

Decided Jan. 12, 1977.

Michael D. Moorhead, Los Angeles, Cal. (Daniel C. Cathcart, Magana & Cathcart, Los Angeles, Cal., and Henry E. Heath, Strong & Hanni, Salt Lake City, Utah, on the briefs), for plaintiffs-appellants.

David K. Watkiss, Salt Lake City, Utah (Philip C. Pugsley, Watkiss & Campbell, Salt Lake City, Utah, on the brief), for defendant-appellee.

Before SETH and HOLLOWAY, Circuit Judges, and STANLEY, Senior District Judge *.

ARTHUR J. STANLEY, Jr., Senior District Judge.

The plaintiffs-appellants appeal from a judgment entered on a jury verdict for the defendant in an action for damages resulting from the crash of a private airplane manufactured by Beech. The aircraft, a Beech Baron twin engine plane manufactured in 1961, was purchased by Dr. Elmer C. Rigby and Sterling G. Pollock in October 1968, from its third successive owner. On the afternoon of November 27, 1968, Dr. Rigby as pilot commenced a flight from Van Nuys, California with his wife, Penelope A. Rigby and two of their children, William and Nikila, as passengers. His intended destination was Salt Lake City. The plane crashed en route and the pilot and passengers were injured, Mrs. Rigby fatally. In the ensuing action Dr. Rigby and his children sought damages for the wrongful death of Mrs. Rigby; Dr. Rigby, William and Nikila sued to recover damages for their personal injuries; and Dr. Rigby, Mr. Pollock, and the United Pacific Insurance Company (insurer of the aircraft) claimed damages for the destruction of the plane.

The plaintiffs claim that the crash was caused by defects in the design and construction of the auxiliary fuel tanks of the aircraft; that the Flight Manual, Owner's Handbook, service letters, and bulletins provided by Beech were defective and misleading in that they failed to describe a possible fuel starvation phenomenon in the auxiliary tanks and failed to advise users of the nature and extent of a problem that might confront operators of the plane. It was further contended that Beech did not properly perform or adequately conduct the required unusable fuel tests for the auxiliary fuel cells. It was claimed that Beech misrepresented the air-worthiness of the air-

* Of the District of Kansas, sitting by designation.

plane to the Federal Aviation Administration and failed to meet the minimum standards prescribed by the F.A.A.; that Beech was well aware of the deficiencies in the auxiliary fuel cells and nevertheless concealed their dangerous propensities.

Beech denied that the auxiliary fuel cells were defective and alleged that the crash occurred as a result of pilot error or by misuse of the aircraft. Beech denied any fraudulent, malicious or negligent conduct.

The issues presented on appeal are that the trial court erred:

(1) in instructing the jury that any defect must render the airplane "unreasonably dangerous" before liability would attach to the defendant;

(2) in excluding evidence on the following items:

(a) "testimony of witnesses concerning fuel starvation in 40 gallon main fuel cells or any fuel cells other than the 31 gallon fuel cell;

(b) "any notice to Beech in connection with any fuel cell other than the 31 gallon fuel cell;

(c) "correspondence between Beech and others concerning possibility of fuel starvation in any fuel cell other than the 31 gallon fuel cell.";

(3) in excluding "Appellant's Exhibits Nos. 19 and 20, relating to tests performed on the thirty-one gallon auxiliary fuel tanks".

## THE INSTRUCTIONS

The trial court instructed the jury that before the appellants could recover they were required to establish that the 31-gallon auxiliary fuel cells were not reasonably fit for the intended purpose.[1]

■ This is a diversity case and is governed by the substantive law of Utah. *Erie RR Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Utah Supreme Court has neither adopted nor rejected the doctrine of strict liability in tort.

1. The instructions challenged are, in pertinent part:

"15. Before the plaintiffs may recover, they must establish from a preponderance of the evidence each of the following elements: 1. That Beech manufactured and sold the airplane in question in a defective condition, in that it had 31-gallon auxiliary fuel cells which were not reasonably fit for the purposes for which they were intended, in that they were defective in design; that is, the 31-gallon auxiliary fuel cells were unreasonably dangerous to the user for use in level flight, as that has been defined for you in the applicable testimony and evidence presented in this case. . . .

"16. A product is in a defective condition, unreasonably dangerous to the user, when it has the propensity for causing physical harm beyond that which could be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics.

"A product is not defective or unreasonably dangerous merely because it is possible to be injured while using it.

"17. The word 'defect' as used in the instructions refers not only to the condition of the product itself, but may include as well the failure to give directions or warning as to the use of the product in order to prevent it from being unreasonably dangerous. If directions or warning as to the use of a particular product

are reasonably required in order to prevent the use of such product from becoming unreasonably dangerous, the failure to give such warnings or directions if any, renders the product defective, as that word is used in these instructions.

"18. In considering whether the 31-gallon auxiliary fuel cells in this case were not reasonably fit for the purposes for which they were designed, and thus rendering the airplane defective and unreasonably dangerous to the user, you should keep in mind that the defendant limited the use of the 31-gallon fuel cells to level flight only. Thus, you are to determine whether the 31-gallon auxiliary fuel cells were unreasonably dangerous when the airplane was used in connection with level flight, as this has been defined for you by the applicable testimony and evidence received by you in this case.

"Also, with respect to whether any defect you may find is unreasonably dangerous, you should consider the hazard to life and limb and the type of activity involved under the circumstances of this case.

"19. In considering whether the 31-gallon auxiliary fuel cells were defective in design, you are to consider only the evidence which you have heard during the course of this trial bearing on the question of whether these fuel cells were reasonably fit for use in connection with their intended purpose; that is, level flight in normal service or turbulence."

*Perkins v. Fitwell Artificial Limb Co.*, 30 Utah 2d 151, 514 P.2d 811 (1973). This being so, the trial court was required to determine the results that would probably be reached if the questions should be litigated in the state courts. In doing so, the court was permitted to consider the decisions of other states, federal decisions, and the general weight of authority. *Julander v. Ford Motor Co.*, 488 F.2d 839 (10th Cir. 1973). In submitting the case on the theory of strict liability in tort the trial judge followed a trail already blazed by this court. See *Julander v. Ford Motor Co., supra; Shuput v. Heublein, Inc.*, 511 F.2d 1104 (10th Cir. 1975); *McGrath v. Wallace Murray Corp.*, 496 F.2d 299 (10th Cir. 1974), and one over which he himself had traveled. *Smith v. Clayton and Lambert Mfg. Co.*, 488 F.2d 1345 (10th Cir. 1973).

The jury was charged, in accordance with the language of Restatement (Second) of Torts, Explanatory Notes, Section 402A, that Beech was liable to the appellants if the fuel cells were not reasonably fit for the purpose for which they were intended; that is, that they were unreasonably dangerous to the user. The appellants objected to the instructions on the ground that they constituted an "erroneous statement of the applicable laws".

The appellants cite cases in which the appellate courts of California, Pennsylvania, and New Jersey have held that the element of "unreasonable danger" is not a valid part of the concept of strict liability. *Cronin v. J. B. E. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972); *Burkebile v. Brantley Helicopter Corp.*, 12 Avi. 18, 136 (1975); *Glass v. Ford Motor Co.*, 123 N.J.Super. 599, 304 A.2d 562 (1973). It is argued that the rule announced in these cases constitutes "a modern judicial approach in products liability litigation".

■ The contention is not supported by the weight of authority. *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir. 1974). And see cases cited under Keynote 8, Products Liability, Modern Federal Practice Digest, 1975 Cumulative Supp., 42 F.Pr.D. 571. We agree with the Fifth Circuit that sellers and manufacturers of products are not insurers and that before strict liability may be imposed upon them, a user of the product must prove that "1) the product in question was defective; 2) the defect existed at the time the products left the hands of the defendant; 3) that because of the defect the product was unreasonably dangerous to the user or consumer (plaintiff); 4) that the consumer was injured or suffered damages; 5) and that the defect (if proved) was the proximate cause of the injuries suffered." *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1272 (5th Cir. 1974).

We have held that in a strict liability case the plaintiff must show that the product in question was unreasonably dangerous and that "a product is unreasonably dangerous only if it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer, with the ordinary knowledge common to the community as to its characteristics". *Hartman v. Miller Hydro Co.*, 499 F.2d 191 (10th Cir. 1974).

■ Believing that the instructions given correctly state the applicable law we find no fault with them.

## THE EXCLUSION OF EVIDENCE WITH RESPECT TO THE 40–GALLON MAIN FUEL CELLS

The trial court excluded testimony offered by the plaintiffs-appellants with respect to claimed defects in design or manufacture of the 40-gallon main fuel cells comprising a part of the aircraft's fuel system. That system included two 40-gallon main fuel cells and two 31-gallon auxiliary fuel cells.

■ The plaintiffs-appellants, in support of their claim of error in the exclusion of evidence with reference to the 40-gallon main fuel cells, point out that in their complaint they alleged defective design and construction of the aircraft's *fuel system* and argue that the fuel system was an integrated system including both the main (40-gallon) and the auxiliary (31-gallon) cells so that evidence as to claimed deficiencies in the 40-gallon cells should have been

admitted. This argument is undercut by the fact that by their answers to interrogatories calling for a particularized statement "of every part of the aircraft in question alleged to have been defective in design" the plaintiffs-appellants responded:

"ANSWER

13. The auxiliary fuel cells failed to contain any bladder sumps, baffles or other restraining devices to prevent displacement of the fuel away from the exit port in the tank, which would allow air to enter the fuel system and cause a loss of power.

QUESTION

14. List separately each part of the aircraft in question that is alleged to have been negligently constructed, stating what was defective or improper in respect to such construction, what was the negligent act of construction as to each part, and the facts establishing such conclusions.

ANSWER

14. See answer to interrogatory No. 13 above."

Further, in the Pre-Trial Order (R.817) the plaintiffs' claims were set forth at length and reference is made consistently and repeatedly to alleged defects in the 31-gallon auxiliary fuel cells. No mention is made of any claim based upon any defect in the 40-gallon main fuel cells, either separately or as part of an integrated system. Listed in the Order as uncontroverted facts are the statements:

"9. The fuel system for the aircraft consisted of two 40 gallon main fuel cells and two 31 gallon auxiliary fuel cells. At the time of the accident and sometime prior thereto, the aircraft was being operated by the pilot on the auxiliary fuel cells."

and

"15. The 31 gallon auxiliary fuel cells are installed to increase the aircraft's operational range, however, the design and construction of the cells require that their use is restricted to level flight only and this limitation is expressly prescribed by the manufacturer."

The contested issues of fact specified in the Pre-Trial Order deal only with claimed defects in the 31-gallon auxiliary fuel cells. Consistent with Rule 16, Federal Rules of Civil Procedure, the Pre-Trial Order contained a provision that the order should control the course of the trial and that all pleadings were deemed merged therein.

There was evidence that the 40-gallon and the 31-gallon fuel cells differed in shape, size and position in the airplane, so that experience with the one could not be transposed to the other. We are convinced, as was the trial court, that the proffered evidence with respect to the design and characteristics of the 40-gallon fuel cells was not relevant. Evidence which is not relevant is not admissible. Rule 402, Federal Rules of Evidence.

## EXCLUSION OF APPELLANTS' EXHIBITS

The appellants complain of the trial court's withdrawal from the jury of their Exhibits 19 and 20. The exhibits consisted of an exchange of telegraphic communications between Beech and the Federal Aviation Administration and have reference to "both the 25-gallon and 40-gallon main tank configurations" and to the unusable fuel tests performed by Beech pursuant to Civil Air Regulations. It is argued that the exhibits were material on the appellants' theory that the tests were conducted in such a manner as to give false readings as to the amount of unusable fuel in the cells resulting in the pilot receiving misleading data. This, it is contended, would have been probative on the issues of "a defect by reason of misleading information and failure to conform to federal regulations and negligence in performing fuel tests not measuring up to federal requirements". There was no evidence that the pilot relied upon any misrepresentation, a requirement of the basic concept of strict liability based upon a claim of misrepresentation of a material fact. Restatement (Second) of Torts, Section 402A.

There is no mention of 31-gallon auxiliary fuel cells in either of the withdrawn exhib-

its. As we have indicated the contested issues dealt only with claimed defects in the 31-gallon auxiliary fuel cells.

■ Consideration by the jury of Exhibits 19 and 20 could well have misled or confused the jurors as the issues submitted to them—the imperfection of the 31-gallon auxiliary cells. As noted in the Advisory Committee's commentary on Rule 403, Federal Rules of Evidence, "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission". The task of balancing the probative value of evidence against danger of confusion of the issues is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited. *Construction, Ltd. v. Brooks-Skinner Building Co.*, 488 F.2d 427 (3d Cir. 1973).

■ We do not think that the trial judge abused his discretion in withdrawing Exhibits 19 and 20 from consideration of the jury.

The judgment is affirmed.