Dolores E. MOE, Eric R. Moe, Kris L. Moe, and Leif A. Moe; Judy Elaine Renzelman, individually, and as conservator and next friend of Minor, Brad Allen Renzelman; Elaine L. Whistler, Paul W. Whistler, Diane Whistler Awalt; Joan Elaine Anderson, individually, and as Guardian ad litem and next friend of Minors, Elizabeth Joan Anderson and Christopher Andrew Anderson; Beverly L. Miles; and the Mountain States Telephone and Telegraph Company, a Colorado corporation, Plaintiffs-Appellants and Cross-Appellees,

v.

AVIONS MARCEL DASSAULT–BREGUET AVIATION, Falcon Jet Corporation, and the Garrett Corporation, Defendants-Appellees and Cross-Appellants.

Nos. 82–1256, 82–1257, 82–1258 and 82–1259.

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1984.

Myles J. Dolan and L.B. Ullstrom, Denver, Colo. (Robert J. Truhlár, Denver, Colo.,

with them on brief), for plaintiffs-appellants and cross-appellees.

W. Robert Ward, Denver, Colo. (Edward J. Godin, Denver, Colo., and Matthew J. Corrigan, New York City, with him on brief), for defendant-appellee and cross-appellant Avions Marcel Dassault-Breguet Aviation.

Ronald O. Sylling, Denver, Colo. (John W. Grund and David M. Setter, Denver, Colo., with him on brief), of Tilly & Graves, P.C., Denver, Colo., for defendant-appellee and cross-appellant Falcon Jet Corp.

Richard C. Coyle, of Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash. (Keith Gerrard and Rex C. Browning of Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., with him on brief), (Edwin S. Kahn of Kelly, Haglund, Garnsey and Kahn, Denver, Colo., also with him on brief), for defendant-appellee and cross-appellant The Garrett Corp.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

The plaintiffs-appellants appeal from a judgment entered on jury verdicts for the defendants-appellees in an action for damages for wrongful deaths, personal injuries and property damages on theories of negligence and strict product liability arising from an airplane crash near Denver, Colorado at 4:52 a.m. on April 3, 1977. Jurisdiction vests by virtue of diversity of citizenship under 28 U.S.C. § 1332. Plaintiffs claimed multiple theories of negligence and defect as the cause of the crash, including defective design of the autopilot system, runaway to the high position of the artificial feel system (Arthur Q), clogging of the suction filters for both of the two independent hydraulic systems, or a combination of the above, together with defect of the powerplant system and a failure to warn.

The airplane involved in the crash was a French manufactured Falcon 10 twin engine turbofan-powered aircraft owned by Mountain Bell, capable of carrying two pilots and seven passengers. The plane was manufactured in France by Avions Marcel Dassault-Brequet Aviation (AMD), a French corporation. The engines of the aircraft were designed, manufactured and sold by the Garrett Corporation (Garrett), a California corporation. Falcon Jet Corporation (Falcon Jet) is a Delaware corporation, engaged in the business of purchasing Falcon 10 aircraft from AMD and selling, maintaining, and providing logistic support and advice for the aircraft sold in the United States. The subject aircraft was sold by AMD to Falcon Jet, which in turn sold the plane to Mountain Bell in September, 1974. The plane had been in continual use by Mountain Bell from September, 1974, to the date of the crash on April 3, 1977. The crash resulted in the deaths of pilots Kenneth Moe and Rodney Renzelman and Mountain Bell employees-passengers Douglas Whistler and Andrew Anderson. Beverly L. Miles, a passenger-employee, alone survived the crash. She suffered extensive, permanent injuries. The aircraft was destroyed.

The trial was separated by the trial court on liability and damages. The trial on liability was before a twelve person jury. It lasted five and one-half weeks. At the outset, we observe some basic rules governing our appellate review. In *Miller v. City of Broken Arrow, Okl.*, 660 F.2d 450, 455–56 (10th Cir.1981) we said, *inter alia*:

> . . . In a diversity of citizenship case the federal district court sits as a state trial court and applies the law of the forum state, *Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516 (10th Cir.1979), cert. denied, 444 U.S. 931 [100 S.Ct. 275, 62 L.Ed.2d 188] . . . (1979). The federal district court [or jury if tried to jury], as trier of fact, has the responsibility of weighing the credibility of the witnesses. *Bingham v. Bridges*, 613 F.2d 794 (10th Cir.1980). On appeal, the reviewing court must view the evidence in the light most favorable to the prevailing party. *Rasmussen Drilling v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144 (10th Cir.1978), cert. denied, 439 U.S. 862 [99 S.Ct. 183, 58 L.Ed.2d 171] . . . (1978). A judgment

may be affirmed on any ground arising from the record. *Casto v. Arkansas-Louisiana Gas Company,* 597 F.2d 1323 (10th Cir.1979). Findings of a trial court will not be disturbed on appeal unless they are clearly erroneous. *Volis v. Puritan Life Insurance Company,* 548 F.2d 895 (10th Cir.1977), Fed.Rules Civ.Proc. Rule 52, 28 U.S.C.A. . . .

A recital of the facts follows. The Falcon 10 aircraft was thoroughly tested and met the Federal Aviation Administration (FAA) requirements in 1973. Mountain Bell had owned and operated the aircraft for some two and one-half years prior to the crash. It had been flown about 1,550 hours, and had no history of hydraulic system or Arthur Q (artificial feel system) problems. The day prior to the crash the plane had been given a 150 hour periodic inspection by two licensed aviation mechanics employed by Mountain Bell. They certified the airplane as airworthy. The evidence of what transpired during the accident flight consisted primarily of tape recordings between the crew and the FAA traffic controller, the FAA radar data, the wreckage of the aircraft, data compiled and analyzed by the National Transportation Safety Board (NTSB), testimony and statements of the surviving passenger, Beverly L. Miles, and the testimony of Donald Mosher, the FAA controller on duty at Stapleton Airport Tower who watched the flight of the plane to the crash site on a radar scope and who listened to the radio communications. Prior to takeoff in the early morning darkness, with experienced pilot Kenneth Moe in command and experienced co-pilot Rodney Renzelman serving as crew, the FAA controller had to correct the crew's mistaken read back of its takeoff clearance, and soon after takeoff the controller reminded the crew that it forgot to turn on the plane's transponder. The aircraft climbed to an altitude of 12,000 feet where the crew reported a "little problem" and requested clearance to return to Stapleton. During the course of communications, the cabin pressure horn in the cockpit could be heard. Beverly Miles testified that there was an oxygen mask drop during the flight. Dur-

ing the 150 hour inspection, the Mountain Bell aviation mechanics had pulled the circuit breakers for the pressurization equipment of the airplane, but apparently did not reset them. The crew turned the plane left to return to Stapleton and then made two descending 360 degree left turns, during which a crew member radioed that the aircraft was "out of control," followed by a crew call of "May day, May day, May day" and, finally, "we have no trim, no hydraulics . . . no control." Controller Mosher testified that following the two descending turns, the plane flew about seven miles of relatively straight flight when the crew requested vectors or headings for a landing on Runway 35. They were assigned a heading of 170 degrees. The crash occurred in a wheat field northeast of Stapleton about fifteen seconds after the assigned heading was given. Mosher testified that there were no crew transmissions concerning power, control or other problems after clearance was given.

The plaintiffs' theory of the crash was that the Falcon 10 had a defective flight control system. Plaintiffs' expert, Alvin S. White, testified that the probable cause for the crew's loss of control of Falcon 10 was a combination of problems in the flight control system, including the hydraulic system, the artificial feel system (Arthur Q) and the autopilot, which plaintiffs contended to be the most dangerous system. Other expert witnesses called by the plaintiffs were Loren Martin, Dean Stull, Maxwell Dow and John M. Wetzler. The evidence reflects that if a pilot engages the autopilot and then attempts to fly the aircraft manually with the autopilot engaged, the autopilot causes the plane to respond opposite to the pilot's control inputs. There is no clear warning that the autopilot is still engaged after the pilot attempts to disengage it by use of the yoke disconnect switch. Plaintiffs' evidence was that the stiffness of Arthur Q runaway, or hydraulic clogging, masked and camouflaged the fact that the autopilot had not disengaged. Further, plaintiffs presented evidence that neither engine was producing power, nor capable of

producing power, at the point of crash. This was predicated on the testimony of Mr. John M. Wetzler, an expert, that the tailpipes on both engines collapsed (imploded or were completely shut prior to impact) resulting from the violent flight maneuvers and gyrations while the plane was out of control. Wetzler did not testify that the engine design was defective. Plaintiffs contended that the flight control system failure and the subsequent loss of engine power were the contributing and ultimate causes of the crash.

The defendants' defended the plaintiffs' claims of negligence and sale of a defective product on denial and affirmative defenses of voluntary, unreasonable use of a defective product with knowledge of the specific danger, and misuse of the aircraft as the cause of the accident.

All parties presented expert witnesses who related different opinions as to the cause of the crash. The plaintiffs' expert witness, Mr. Alvin S. White, opined, among other things, that the autopilot system problem was the most improbable of the problems he identified. White acknowledged that if the crew operating the plane at the time of the accident had known of the autopilot problem testified to by Captain Richard F. Bucknell, Manager of Flight operations for Mountain Bell, who was called as an adverse witness by defendants, that this would constitute adequate warning to Mountain Bell and the pilot crew involved in the crash. Bucknell testified that shortly prior to the subject accident he was piloting the Falcon 10 with Kenneth Moe serving as co-pilot when, after punching the yoke disconnect button, the autopilot did not disengage. In a matter of a few seconds, realizing that he had no manual control, he disengaged the autopilot with his right hand. [R.App.Vol. VI, pp. 169–175]. Bucknell discussed the problem with Mr. Moe [R.App.Vol. VI, pp. 173–174]. There is evidence that Rodney Renzelman was informed of the problem. The defendants' expert, Jack Waddell, an experienced test pilot employed by Garrett, testified that there are multiple means of disconnecting the autopilot and that the crew

should confirm and identify disconnect before assuming manual flight. He opined that prolonged manual flights while the autopilot is engaged constitutes crew negligence and misuse, given the uncontroverted testimony of Captain Bucknell of Mountain Bell that Mountain Bell and the pilot crew of the Falcon 10 involved in the crash were actually aware of the loss of control which occurs when the yoke switch malfunctions and the pilot attempts manual flight control.

As the trial court observed, this was a "highly contested, complex trial" involving "multiple theories of recovery, including multiple or combinations of failures in various complicated systems of the aircraft" which claims were "based on negligence and strict liability" advanced in a trial which lasted five and one-half weeks, involving exhibits in excess of 250 and 49 witnesses, including depositions and one live offer of proof. [R., App.Vol. IV, p. 142]. In denying the plaintiffs' motion for judgment notwithstanding the verdict, the trial court observed, *inter alia:*

> We sat through the trial. We heard the witnesses, and we examined the evidence. We believe that it is clear that viewing the evidence and inferences in a light most favorable to the defendants, reasonable persons could reach different conclusions, and the evidence was in conflict. Therefore, plaintiffs are not entitled to a judgment notwithstanding the verdict ... Because of the nature of the trial, the results would not have been different had the trial been entirely free of error. Each side had a full opportunity to explore all issues and facts. Plaintiffs received a full, adequate, and fair trial, and any error which may have occurred did not prejudice presentation of their case in a balanced manner.

[R., App., Vol. IV, pp. 142, 143].

The jury unanimously found by Special Verdict Form A all defendants were not negligent. By Instructions 21, 39 through 49 and Special Verdict Forms B–1 through B–11 the jury returned a verdict in favor of

each defendant on plaintiffs' claims for strict product liability. [R., App.Vol. VII, pp. 240–243]. The jury did not find pilots Kenneth L. Moe and Rodney Renzelman negligent. The jury found plaintiff Mountain Bell negligent but did not find that the negligence was a cause of the accident. The jury did not respond to Question 13 relating to a determination of comparative negligence. [R., App.Vol. VIII, pp. 239–245].

Further factual recitation will be made in dealing with specific issues presented on appeal. The plaintiffs-appellants contend that the trial court erred (1) in misstating Colorado law through jury instructions which prohibited the finding of negligence on the part of defendants if any contributory negligence as to the pilots or to Mountain Bell was also found, (2) in limiting Plaintiffs' claim by failing to instruct the jury on claims for sale of defective product as to Falcon Jet (the seller) and Garrett (seller of the engines), (3) in misinterpreting Colorado law on assumption of risk and misuse by making that defense available to the defendants against all the plaintiffs in this strict product liability suit, (4) in entering judgment based on inconsistent verdicts, (5) in denying the admission into evidence Newsflash 16, a document published by a defendant and demonstrative of the need to warn of a known defect in the aircraft, by ruling that negligence and strict liability in tort are one and the same under Fed.R.Evid. 407, (6) in denying the admission into evidence of the testimony of a surviving pilot from a similar out of control Falcon jet emergency incident, (7) in denying the use by plaintiffs of business documents kept by defendants, (8) by denying plaintiffs the opportunity to use as rebuttal evidence to National Transportation Safety Board (NTSB) findings, a telex message, indicating that Falcon Jet intended to protect any unfavorable evidence concerning this accident, sent by Falcon Jet to AMD, (9) in contravening federal statutory law and Tenth Circuit case law by allowing into evidence NTSB testimony as to the cause of the accident, (10) in allowing prejudicial misrepresentations by defendant's

counsel to go uncured, (11) in applying a one-year bar to a claim for punitive damages under Colorado law, and (12) in prejudicing the plaintiffs by bifurcation of the trial.

Defendant AMD cross appeals, contending that the trial court erred and abused its discretion in refusing to tax as costs for AMD the reasonable and necessary costs of partial daily transcripts, exhibits used at trial, travel expenses of experts and French company employees beyond one hundred miles, and depositions used but not read into the record at trial, in total amount of $20,654.21. Defendant Falcon Jet cross appeals from the trial court's disallowance of $8,310.05 of costs incurred. Defendant Garrett Corporation also cross appeals from the trial court denial of witness costs, daily transcripts and deposition costs in approximate amount of $22,679.95.

## I.

Plaintiffs-appellants contend that the trial court erred in giving incorrect instructions on the Colorado law of negligence which effectively precluded the jury from finding negligence on the part of the defendants if contributory negligence as to the pilots or to Mountain Bell was also found. These contentions are specifically directed to Instructions 27A, 29 and 30. We here observe that the trial court was constantly alert to the need to avoid jury confusion. In order to achieve this, the court meticulously advised the jury that specific evidence could be considered only in regard to specific claims and parties. Furthermore, the court instructed the jury separately as to plaintiffs' various claims against each of the three defendants, both with respect to negligence and strict liability.

First and foremost, there is no explanation by plaintiffs'-appellants' trial counsel why no objection was lodged to these instructions before the jury retired. Fed. Rules Civ.Proc.Rule 51, 28 U.S.C.A. provides, *inter alia:*

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. Opportunity shall be given to make the objection out of the hearing of the jury.

*See also, Prebble v. Brodrick,* 535 F.2d 605, 612 (10th Cir.1976).

■ A party cannot sit idly by and permit error to occur without objection. This court will not review instructions given to which no objections were lodged before the jury retired for deliberation unless they are patently plainly erroneous and prejudicial. Such is not the case here. In *Fiedler v. McKea Corp.,* 605 F.2d 542, 548 (10th Cir. 1979) we stated that we will not review the "propriety" of an instruction given in the absence of an objection. Here, the trial court was not alerted by counsel for plaintiffs or plaintiffs proper to any challenges to the subject instructions given. The purpose of Rule 51, *supra,* is to make it clear to the trial court what the objecting party's position is in order to provide the trial court the opportunity to make proper changes, corrections or additions. *Rogers v. Northern Rio Arriba Electric Cooperative, Inc.,* 580 F.2d 1039, 1042 (10th Cir.1978).

Instruction No. 27A reads as follows:

In order for the plaintiffs to recover from the defendant Dassault on their claim of negligence, you must find all of the following have been proved:

1. That Dassault was negligent in designing or testing the Falcon 10 aircraft or in failing to provide sufficient warnings and instructions on use of the aircraft in that it failed to exercise reasonable care to prevent the aircraft from creating an unreasonable risk of harm to person or property while the aircraft was being used in the manner Dassault should reasonably have expected;

2. The accident was caused by the negligence of Dassault while the aircraft was being used in the manner that Dassault should reasonably have expected.

If you find that either or both of these two propositions have not been proved by a preponderance of the evidence, then your verdict on this claim must be for Dassault.

On the other hand, if you find that both of these propositions have been proved by a preponderance of the evidence, then your verdict on this claim must be for the plaintiffs, unless you should also find that Mountain Bell or the pilot crew was negligent in failing to maintain the aircraft properly, failing to train the crew properly, or failing to fly the aircraft properly. In any event, you shall answer the questions contained on Special Verdict Form A, and your foreperson shall complete it and all jurors shall sign it.

[R., App.Vol. IX, p. 18].

Instruction No. 29 read as follows:

In order for any one of the plaintiffs to recover from defendant Garrett on the plaintiffs' claim of negligence you must find that each of the following have been proved.

1. Garrett had design responsibility for the engine or tailpipe;

2. Defendant Garrett was negligent in that it failed to exercise reasonable care to design the engine or tailpipes so that they would not create an unreasonable risk of harm to person or property while the aircraft was being used in the manner defendant Garrett should reasonably have expected; and

3. The accident was caused by such negligence while the aircraft was being used in the manner that Garrett should reasonably have expected.

If you find that any or all of these propositions has not been proved by a preponderance of the evidence, then your verdict on this claim must be for the defendant Garrett.

On the other hand, if you find that all of these propositions have been proved by a preponderance of the evidence, then your verdict on this claim must be for the plaintiffs, unless you should also find by a preponderance of the evidence, that

Mountain Bell and the aircraft crew was negligent in failing to maintain the aircraft properly, failing to train the crew properly, or failing to operate the aircraft properly. In any event, you shall answer the questions contained on Special Verdict Form A, and your foreperson shall complete it and all jurors shall sign it. [R., App.Vol. IX, p. 19].

Instruction No. 30 read as follows:

If Garrett knew or in the exercise of reasonable care should have known that the use of the engine by Dassault as a component part in Dassault's aircraft might be harmful or injurious to others and that the danger of such harm or injury would not be obvious to or otherwise known by Dassault or Dassault's subcontractor, Grumman Aircraft Corporation, then Garrett was obligated to use reasonable care to warn Dassault or Grumman of the danger, and Garrett was negligent if it failed to do so.

In order for any of the plaintiffs to recover from defendant Garrett on plaintiffs' claim that negligent failure to warn by Garrett caused the tailpipes to collapse in flight, you must find that the tailpipes did collapse in flight and that both of the following have also been proved:

1. Defendant Garrett was negligent in that it failed to exercise reasonable care to test the engines and warn Dassault or Grumman so that the engines and the tailpipes would not create an unreasonable risk of harm to person or property while the aircraft was being used in the manner defendant Garrett should reasonably have expected; and

2. The accident was caused by defendant Garrett's negligence while the aircraft was being used in the manner that Garrett should reasonably have expected.

If you find that either or both of these two propositions has not been proved by a preponderance of the evidence, then your verdict on this claim must be for the defendant, Garrett.

On the other hand, if you find that both of these propositions have been proved by a preponderance of the evi-

dence, then your verdict on this claim must be for the plaintiffs, unless you should also find by a preponderance of the evidence that Mountain Bell and the aircraft crew were negligent in failing to maintain the aircraft properly, failing to train the crew properly, or failing to operate the aircraft properly. In any event, you shall answer the questions contained on Special Verdict Form A, and your foreperson shall complete it and all jurors shall sign it.

[R., App.Vol. IX, pp. 20–22].

Appellants argue here that these instructions constituted plain error because they precluded the jury from finding the Defendants negligent *even as to the passengers* if the jury found *contributory* negligence on the part of the pilots or Mountain Bell. Appellants contend that Colorado jury instruction (CJ1–CIV.2d 14:1, 1980 and 1981 supplement) and Colorado's law of comparative negligence requires that only affirmative defenses *other than contributory negligence* can bar the finding of negligence on the part of a defendant.

■ We hold that appellants have not met the burden to support the "plain error" exception to Rule 51, *supra.* The totality of these instructions when read in conjunction with the interrogatories contained in Special Verdict Form A support the view that the jury could not find *any causal* negligence on the part of any defendant and, further, *no causal* negligence on the part of any plaintiff. This, *of course,* explains why the jury did not answer question 13 which was directed to the determination of comparative fault. There could not be any comparative fault when there was no finding of causal negligence against any party. We see no merit in appellants' argument that because the jury found Mountain Bell negligent, even though this negligence had no causal relationship to the accident, that such negligence could have, in the jurors' minds, fulfilled the contributory negligence clause contained in the instructions. This possibility is speculative, hypothetical, and without foundation in the evidence to support a "plain error" exception to Rule 51.

The instructions of the court, when considered as a whole, as they must be, were thorough and adequate. The trial court meticulously advised the jurors to consider the instructions as a whole and not to single out one instruction. [R., App.Vol. VIII, p. 169]. In *Commercial Iron & Metal Co. v. Bache Halsey Stuart, Inc.,* 581 F.2d 246, 250 (10th Cir.1978), *cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979) we said "No single instruction can tell you everything, but you (the jurors) have to consider the totality of all the instructions." Furthermore, the trial court carefully explained plaintiffs' claims against each defendant and the two legal theories relied upon, negligence and products liability. The court likewise, by Instruction 34, instructed the jury on the Colorado comparative negligence law pursuant to § 13–21–111, C.R.S. 1973. That instruction included this language:

> If you find that the accident was caused by the negligence of one or more of the defendants, then you must determine whether one or more of the plaintiffs was also negligent and determine to what extent the negligent conduct of each negligent party, whether the party is a plaintiff or a defendant, contributed to cause the accident, expressed as a percentage of one hundred percent.

[R., App.Vol. IX, p. 24].

The trial court orally advised the jury of the comparative negligence instruction and its relationship to Special Verdict Form A. The jury was, on the basis of the totality of instructions, more than adequately advised of the negligence claims and the applicable Colorado law. Assuming, arguendo, that Instructions 27A, 29 and 30 were erroneous, such error was harmless. This is so because the jury found no causal negligence on the part of any defendant. It was for this reason that there was no jury finding of contributory or comparative negligence.

## II.

■ Appellants contend that the trial court erred in its instructions relating to plaintiffs' claims for sale of a defective product against appellees Falcon Jet Corporation and Garrett. The appellants do not challenge the instructions in this regard against AMD. We hold that when the court's instructions on plaintiffs' claims for liability for sale of a defective product are considered as a whole, no error occurred. Instructions 21 and 39 through 49, coupled with Special Verdict Forms B–1 through B–11 clearly and correctly instructed the jury on the strict product liability claims [R., App.Vol. IX, pp. 26–36].

Colorado has adopted the *Restatement (Second) of Torts* § 402A (1965) in its entirety, as the basis for strict liability for the sale of a defective product. The Restatement doctrine was expressly adopted in *Hiigel v. General Motors Corporation,* 544 P.2d 983 (Colo.1975) and was stated as follows:

> "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold,
>
> (2) The rule stated in Subsection (c) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into contractual relation with the seller."

544 P.2d at pp. 986, 987.

*Hiigel* further stated:

> Under § 402A, a product must be defective before liability will inure. The major issue to be addressed by this court is whether a failure to warn adequately can render a product, otherwise free of defect, defective for purposes of § 402A. We answer this question in the affirmative. *Restatement (Second) of Torts,* § 402A, Comment j, states:

"In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use." 544 P.2d at p. 987.

*See also, Anderson v. Heron Engineering Co.,* 198 Colo. 391, 604 P.2d 674 (1979); *Union Supply Company v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978); *Good v. A.B. Chance Co.,* 39 Colo.App. 70, 565 P.2d 217 (1977).

The plaintiffs alleged that AMD was liable for sale of a defective product on various theories, including design defect and inadequate operating instructions as to the plane, the hydraulic system, the engines, the autopilot and the Arthur Q system. These theories were fairly and correctly submitted to the jury and the jury found in favor of AMD. [R., App.Vol. VIII, pp. 240–243; Special Verdict B–1, B–4, B–6 and B–9].

■ With regard to the defective product claim lodged against Falcon Jet, plaintiffs alleged a failure to warn and a failure to provide adequate operating instructions [R., App.Vol. I, Pretrial Order; Instructions 39 and 43]. Appellants argue that even though AMD sold the Falcon 10 to Falcon Jet and even though the jury did not find AMD liable for sale of a defective product, still Falcon Jet, as seller of the plane to Mountain Bell and installer of the autopilot, could be liable on the same theory had the proper instruction been given. Appellants point to the installation of a defective autopilot by Falcon Jet as the basis for an instruction permitting the jury to determine that Falcon Jet sold Mountain Bell a defective airplane. Instruction 43 did, however, instruct that plaintiffs had the burden of proving that the Falcon 10 airplane was defective at the time it was sold by Falcon Jet. The Special Verdict forms tendered clearly applied the "sale of a defective product" language to Falcon Jet. In addition, Instruction 39 identified a claim that Falcon Jet sold a defective product. The trial court, out of an abundance of caution, was very generous to appellants because the only claim advanced by plaintiffs against

Falcon Jet in strict liability was anchored to Falcon Jet's failure to warn. [R., Vol. 2, Pre-trial Order, Theory No. V., pp. 235–237]. The pre-trial order governs the trial and it "measures the dimensions of the lawsuit, both in the trial court and on appeal." *American Home Assur. Co. v. Cessna Aircraft Co.,* 551 F.2d 804, 806 (10th Cir.1977), *quoting, Hodgson v. Humphries,* 454 F.2d 1279, 1281 (10th Cir.1972). *See also, Smith v. Ford Motor Co.,* 626 F.2d 784 (10th Cir. 1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). Plaintiffs did not object to Instruction 40 which defined a defective product and specifically stated that "this instruction does not apply to Plaintiffs claims against Defendant Falcon Jet Corporation because Plaintiffs are not claiming that Falcon Jet Corporation had any responsibility for the design or manufacture of the Falcon 10 airplane." [R., App.Vol. IX, p. 29]. No plain error occurred in its submission because Plaintiffs alleged only failure to warn on the part of Falcon Jet, not design defect. Thus, they were entitled only to the failure to warn instructions given. No error occurred.

■ Again, as to Garrett Corporation, plaintiffs alleged that the trial court erred in failing to give an instruction for sale of a defective product in that there was testimony that 1) Garrett manufactured and sold the engines which surged and caused tailpipe collapse, and 2) Garrett manufactured and sold engines but failed to develop internal pressure information necessary for the design of the tailpipes attached to the engines, and that this was a cause of the crash. This claim is without merit. The trial court correctly submitted, through Instruction 44, the only theory finding any support in the evidence, i.e., failure to provide sufficient warnings or instructions for the product's use. The only evidence justifying even this instruction were indications that Garrett should have provided information with regard to pressures developed by the engines during surge so that the airframe manufacturer would be advised of the manner of designing a tailpipe adequate to withstand those pressures. It is error to

give an instruction on a theory which does not have sufficient evidence in the record supporting its submission to the jury. *United Telecom v. American Tel. & Comm. Corp.*, 536 F.2d 1310 (10th Cir.1976). No error occurred with regard to the challenged instructions relating to Garrett.

### III.

Appellants allege that the trial court erred by instructing the jury on the defenses of assumption of the risk and misuse as to the claims of all the Plaintiffs. The challenged instructions are Nos. 45 and 46.

Appellants complain that, as a matter of law, assumption of risk was not available as a defense regarding passengers Whistler, Anderson and Miles, inasmuch as there is no evidence, as required by Colorado product's liability law, that they had subjective knowledge of the danger or that they voluntarily and unreasonably encountered a known danger. *Union Supply Co. v. Pust, supra; Good v. A.B. Chance and Co., supra.* On this predicate, appellants argue that to justify an assumption of risk and misuse instruction against *all* the plaintiffs, the Defendants were required to introduce substantial evidence that the passengers had actual knowledge of the specific danger caused by the defective design of the Falcon 10 aircraft.

Appellants acknowledge that Richard Bucknell's testimony constituted some evidence, which they identify as "the only evidence" [Appellants' opening Brief, p. 15] concerning the knowledge of Kenneth Moe and Mountain Bell relating to the effect of manual flight when the autopilot is engaged. Appellants contend that the Bucknell experience was temporary in nature and cannot be equated with catastrophic loss of control of an airplane for a period of several minutes. As to Rodney Renzelman's knowledge of the autopilot defect, appellants contend that the only evidence is that he may have known that there had been intermittent malfunction of the disengage button on the yoke.

Appellants, again, did not raise the objections here posited to Instructions 45

and 46 before the jury retired. Thus, they did not comply with the requirements of Rule 51, *supra.* Plaintiffs argued only that the evidence was insufficient to support these instructions. When the trial court ruled on Plaintiffs' post-trial motions, i.e., for judgment notwithstanding the verdict and for new trial, it dealt directly with the contention that it erred by failing to strike the affirmative defenses. The court stated that (a) there was no error when the jury instructions are considered as a whole, (b) the plaintiffs' objections were untimely in that plaintiffs did not at any time tender language distinguishing among the plaintiffs either in regard to the jury instructions or the motion to strike the affirmative defenses, and (c) counsel for plaintiffs made no effort to distinguish among the rights and duties of the passenger-plaintiffs and the other plaintiffs. Finally, and in our view decisive of the contention here presented, the trial court pointed to Instruction 37 regarding imputation of negligence which, in part, read:

> The negligence, if any, of Mountain Bell, Kenneth Moe [pilot] or Rodney Renzelman [co-pilot] is not chargeable to plaintiff Beverly L. Miles or to the Anderson plaintiffs or the Whistler plaintiffs [passengers].

[R., App.Vol. IV, pp. 149, 150].

No error occurred in the trial court's submission of Instructions 45 and 46 when read in context.

### IV.

Appellants argue that the trial court erred in accepting the jury verdicts because they are inconsistent with every theory that the experts testified to at trial, and that the jury's answers to interrogatories show that it did not understand the instructions or the evidence. Appellants contend that:

> "through their refusal to choose between the two theories presented by the expert testimony, the jury was in essence expressing a lay opinion as to the cause of the crash which was different from the experts' opinions. While the experts'

opinions were that the cause was determinable, the jury's verdict expressed a lay opinion that the cause was unknown. The jury should not be allowed to express such a lay opinion as to cause. *Curtis v. General Motors Corp.,* 649 F.2d 808, 813 (10th Cir.1981). The jury is not at liberty to disregard arbitrarily the unimpeached testimony of expert witnesses when the testimony bears on technical issues of causation beyond the competence of lay determination. *Webster v. Offshore Food Service, Inc.,* 434 F.2d 1191, 1195 (5th Cir.1970) (citing *Bearman v. Prudential Ins. Co. of America,* 186 F.2d 662, 665 (10th Cir.1951)." [Opening Brief of Appellants, p. 21].

We have reviewed *Curtis, supra,* and *Webster, supra.* These cases stand for the rule that a jury may not express a lay opinion as to the cause of injury when expert witnesses were unable to do so. These cases do not stand for the proposition, as appellants seem to imply, that a jury must accept expert opinions, *ipso facto.*

The answers given by the jury on the negligence claims, accompanying Instructions 21–38 and Special Verdict Form A were as follows:

We, the jury, present our answers to questions presented by the Court, to which we have unanimously agreed:

1. Was the defendant, Avions Marcel Dassault-Breguet Aviation, negligent? (Yes or No)
 Answer: No.

2. Was the negligence, if any, of the defendant, AMD, a cause of the accident? (Yes or No)
 Answer: No.

3. Was the defendant, Falcon Jet Corporation, negligent? (Yes or No)
 Answer: No.

4. Was the negligence, if any, of the defendant Falcon Jet Corporation, a cause of the accident? (Yes or No)
 Answer: No.

5. Was the defendant, The Garrett Corporation, negligent? (Yes or No)
 Answer: No.

6. Was the negligence, if any, of the defendant, The Garrett Corporation, a cause of the accident? (Yes or No)
 Answer: No.

7. Was Kenneth L. Moe negligent? (Yes or No)
 Answer: No.

8. Was the negligence, if any, of Kenneth Moe a cause of the accident? (Yes or No)
 Answer: No.

9. Was Rodney Renzelman negligent? (Yes or No)
 Answer: No.

10. Was the negligence, if any, of Rodney Renzelman a cause of the accident? (Yes or No)
 Answer: No.

11. Apart from the negligence, if any, of Kenneth Moe and Rodney Renzelman, was plaintiff Mountain Bell negligent in any other or additional respect?
 Answer: Yes.

12. Was this other or additional negligence, if any, of Mountain Bell a cause of the accident? (Yes or No)
 Answer: No.

[R., App.Vol. VIII, pp. 239, 240].

The jury did not answer interrogatory 13. It asked for the jury's determination of comparative negligence. There was, of course, no basis for answering it inasmuch as the jury had found no negligence on the part of any defendant.

Fed.Rules Evid.Rule 702, 28 U.S.C.A. provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The purpose of admitting the testimony of an expert witness is, of course, to assist the jurors in understanding the evidence or to determine a fact in issue. It remains the duty of the jury to evaluate the testimony of expert witnesses, just as all other wit-

nesses, and to reach conclusions as to its worth and weight. Our entire jury system is anchored to the jurors' determination of credibility of witnesses and the weight to be given their testimony.

 Our analysis of the jury's verdict convinces us that the jury was not persuaded that the Defendants were negligent and that, additionally, there was failure to prove causation by the plaintiffs. The plaintiffs, of course, shouldered that burden. By the same token, the jury was not convinced that Plaintiffs Mountain Bell or the pilot crew were causally negligent in flying the aircraft. Under these circumstances, we hold that the verdicts and the jurors' responses to the interrogatories are consistent. Neither party convinced the jury of the cause of the crash of the Falcon 10. While the jury was free to accept various theories of the cause of the crash, it obviously was not persuaded that the evidence established a definitive cause. Accordingly, the verdicts reflect the jury's determination that the Plaintiffs failed, by a preponderance of the evidence, to establish a theory of negligence or causation. The interrogatories were clear and concise. They were directed to contested issues of fact. The jury did not find causal negligence on *any* theory presented at trial because the jury was not persuaded that *any* theory had been established by a preponderance of the evidence. This does not render the jury's verdict "inconsistent." There is no rule *requiring* the jury to accept one of several expert postulations on causation. Expert witness testimony is subject to the same tests of credibility and weight as is any other admissible evidence.

The burden of proof was upon the Plaintiffs to establish their case by a preponderance of the evidence. *See* Instruction 17. The trial court, by Instruction 25, advised the jury that any finding of fact must be based on probabilities, not possibilities, surmise, speculation or conjecture and that the occurrence of an accident does not raise any presumption of negligence on the part of any plaintiff or any defendant. The jury did not find, by a preponderance of the entire evidence, that the crash was caused by negligent design or negligent failure to warn on the part of Defendants, that the pilots were negligent, or that Mountain Bell's negligence was the cause of the crash. Thus, insofar as the jury was concerned, the *cause* of the crash remained unknown. The jury verdict was true to the trial court's admonishment that no finding may be based on surmise, speculation or conjecture.

## V.

Appellants argue that the trial court committed reversible error by denying admission into evidence of Plaintiffs' Exhibit 19, "Newsflash 16," which appellants claim constituted evidence of the need for a warning regarding the insidious danger presented by the autopilot in the Falcon 10. This contention challenges the trial court's interpretation and application of Fed.Rules of Evidence, Rules 407 and 403.

The proffered Exhibit 19 "Newsflash 16" was published by AMD on March 1, 1978, after the crash of the Falcon 10 and reads in pertinent part as follows:

In the Autopilot engaged configuration, the autopilot may fail to disengage when the pilot presses the switch in the control wheel.

\* \* \* \* \* \*

A refusal of the Autopilot to disengage, *not perceived* by the pilot, constitutes an insidious failure which may result in a situation similar to the situation resulting from an Horizontal Stabilizer trim runaway. Under the action of the Automatical Trim, the Horizontal Stabilizer moves in a direction opposed to that commanded by the pilot. Such a motion is identified by a slow sounding of the clacker.

Since such a motion can be stopped by the Horizontal Stabilizer normal control, only if the counteraction is maintained, is it advisable to:

1. Rapidly use the emergency Horizontal Stabilizer trim control. Only this action can definitely stop such an Horizon-

tal Stabilizer motion. Exhibit 19 (R. vol. 80) (*Emphasis in original.*)

[R., App.Vol. IX, p. 66, Exhibit 19].

Prior to trial the court expressed its views that Exhibit 19 would not likely be admitted inasmuch as Plaintiffs alleged causes of action based both on negligence and strict liability and the policy underlying Fed.R.Evid. 407, was not to discourage persons from taking remedial measures. The trial court recognized, however, that its ruling would be guided by the balancing required under Fed.R.Evid. 403.

Rule 407 reads:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligent or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The feasibility of warning about the autopilot disengagement problem in the Falcon 10 prior to the crash was not controverted.

Rule 403, Fed.Rules of Evidence reads:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Appellants argue that the trial court erred in applying Rule 407, *supra,* in light of the law of Colorado then controlling as set forth in *Good v. A.B. Chance Co., supra,* which followed the reasoning of *Ault v. International Harvester,* 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974). *Ault* held, in a products liability action, that evidence of a manufacturer's post-accident warning had a direct bearing on liability as tending to establish knowledge of the defect, feasibility of giving warnings, duty to warn, and breach of that duty. The *Good*

*v. Chance* court referred to *Hiigel v. General Motors Corp., supra,* for the rule that failure to warn may render a product defective when that failure is a proximate cause of the injury, but it also relied on *Hiigel* for the rule that, "[a] affirmative defense in a products liability case exists when it can be shown that the injured party knew of the dangerous defect in the product and voluntarily and unreasonably encountered the known danger it presented." 565 P.2d at pp. 222, 223.

The trial court ruled that Rule 407, *supra,* is not governed by or made applicable by state law. On this predicate, the court did not view the *Good* decision as binding. The trial court stated that Rule 407 should not discourage defendants to take remedial measures following an accident. We respectfully disagree with the trial court's conclusion that the admissibility of evidence in diversity actions is governed exclusively by federal law—that is, the Federal Rules of Evidence. Even so, such considerations do not affect the outcome of the instant case. In *Rexrode v. American Laundry Press Co.,* 674 F.2d 826, 831 (10th Cir.1982), *cert. denied,* 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117, we held that in a diversity based products liability case, in the absence of state law holding otherwise, state evidentiary law will be applied to determine admissibility of subsequently promulgated industry standards. We there noted that no Kansas court had previously addressed the issue; thus, our court was required to determine what the result would be if the question were litigated in state court.

*Herndon v. Piper Aircraft Corporation,* 716 F.2d 1322 (10th Cir., 1983), was a diversity case arising under the laws of New Mexico involving a defectively manufactured Piper aircraft. We did not there decide whether Rule 407 is procedural and thus strictly a matter of federal law or substantive if the situs state had announced a product liability policy binding on the federal court. In *Herndon,* we observed that "[n]o New Mexico court has yet addressed the issue of admissibility of subsequent repair evidence in a strict liability

case." This court proceeded to apply "the federal rule" which permitted the admission of subsequent remedial conduct where the feasibility of repair had not been stipulated, and the probative value of the evidence of post-accident remedial conduct outweighed any possible prejudice under Rule 403. *Herndon* reviewed the decisions of the various courts, federal and state, relating to Rule 407 and its state counterparts. We there observed that only the Eighth Circuit had explicitly held, as did *Herndon,* that Rule 407 does not exclude post-accident remedial measures in product liability cases. Four circuit courts had held otherwise. We noted that while there is also a split of authority among the states, far more state courts have recognized that Rule 407, or its state equivalent, does not apply in strict liability cases.

It is our view that when state courts have interpreted Rule 407 or its equivalent state counterpart, the question whether subsequent remedial measures are excluded from evidence is a matter of state policy. *See, Rexrode v. American Laundry Press Co., supra.* The purpose of Rule 407 is not to seek the truth or to expedite trial proceedings; rather, in our view, it is one designed to promote state policy in a substantive law area. *See,* comments of Professor Schwartz, Vol. 2, Weinstein's Evidence, Rule 407, 407–1, 2 (1982). For example, the State of Maine has adopted a rule of evidence which repudiates the rule of exclusion with regard to subsequent remedial repairs. This creates a conflict between Rule 407 and the Maine rule. We hold that when such conflicts arise, because Rule 407 is based primarily on policy considerations rather than relevancy or truth seeking, the state rule controls because (a) there is no federal products liability law, (b) the elements and proof of a products liability action are governed by the law of the state where the injury occurred and these may, and do, for policy reasons, vary from state to state, and (c) an announced state rule in variance with Rule 407 is so closely tied to the substantive law to which it relates (product liability) that it must be applied in a diversity action in order to effect

uniformity and to prevent forum shopping. *Rexrode v. American Laundry Press Co., supra.* We are not unmindful of the rule laid down in *Hanna v. Plummer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), that where the federal and state rules both govern the issue in dispute and are in direct conflict, the federal rule applies in a diversity based case if the federal rule is arguably procedural in nature. However, we observe that while the sufficiency of the evidence is tested against the federal standard in a diversity case, *Hidalgo Properties, Inc. v. Wachovia Mortgage Co.,* 617 F.2d 196, 198 (10th Cir.1980), the underlying cause of action, with its attendant elements and requirement of proof in a diversity case, is governed by state law. *Safeway Stores v. Fannan,* 308 F.2d 94, 97 (9th Cir.1962). The ground for exclusion of remedial measures under Rule 407 rests on the social policy of encouraging people to take steps in furtherance of safety. The decision is necessarily a state policy matter. Product liability is not a federal cause of action but, rather, a state cause of action with varying degrees of proof and exclusion from state to state. If a state has not announced controlling rules, such as New Mexico, (*Herndon, supra*) the federal district court, sitting as a state court in a product liability diversity case, must determine whether Rule 407 applies. Where the state law is expressed in product liability cases, these expressions control the application of Rule 407. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the law of the state supplies the rule of decision, there is no justification for reliance on Rule 407. We recognize that, by its terms, Rule 407, when read in conjunction with Rules 401 and 402, does appear to apply in these cases. However, such a result is an unwarranted incursion into the *Erie* doctrine. Louisell and Mueller, Federal Evidence, Vol. 2, § 166, p. 258. The crux of this conclusion is well stated, as follows:

> The constitutional meaning of the *Erie* doctrine seems to be this: The enumerated powers set forth for the Congress in Article II and for the Judiciary in Article

III are by implication limited powers, and the notion of limited federal authority is reinforced by the Tenth Amendment. Therefore, the federal judiciary may not "find" or "create" general law to resolve controversies merely because they are litigated in federal court. One difficulty in advancing such an argument against the application of Rule 407 lies in the fact that the constitutional boundaries of congressional power, where there are competing state rules, have not been clearly defined .... Although *Erie* itself holds that there is no federal general common law of torts, nothing in the case suggests Congress could not pass a statute governing the rights of the parties on the very facts of *Erie* .... Despite the problems noted ... there may well be valid constitutional reasons why Rule 407 cannot be applied in cases where state law supplies the rule of decision. Even if Congress *could* constitutionally enact statutes to govern the rights of parties in a given instance, it does not necessarily follow that the Congress, in codifying the law of evidence, may constitutionally enact a narrow statute governing a single substantive issue in a lawsuit which is otherwise to be resolved by reference to state law .... It is unlikely that the Congress intended, in enacting Rule 407 along with the other rules, to make any incursion whatsoever in the *Erie* doctrine. [Footnotes omitted].

Louisell and Mueller, Federal Evidence, Vol. 2, § 166, pp. 261–264.

 Notwithstanding our view that the trial court erred in ruling that Fed.Rule of Evid.Rule 407 applies in diversity actions without regard to state law, we hold that no harm resulted therefrom because the trial court's actions were proper and correct on other grounds. The Colorado decisions of *Good v. A.B. Chance Co., supra,* and *Roberts v. May,* 41 Colo.App. 82, 583 P.2d 305 (1978) controlled at the date of the Falcon 10 crash. Regardless of the trial court's Rule 407 ruling, the court fully and adequately instructed under the theories announced in those cases and the theories advanced by the plaintiffs, i.e., sale of a defective product and failure to warn. Furthermore, the trial court *expressly* excluded the "Newsflash 16" from evidence based on the balancing factors set forth in Rule 403. Colorado has adopted Colo.Rules of Evidence, Rule 407 (1980), which is identical to federal Rule 407. The Committee comment indicates an intent to exempt strict liability actions from application of the Rule. However, the Colorado legislature, by enactment of § 13–21–404, C.R.S. 1973 (1982 Supp.) limited evidence of subsequent measures except when attempting to show a duty to warn. The statute reads:

In any product liability action, evidence of any scientific advancements in technical or other knowledge or techniques, or in design theory or philosophy, or in manufacturing or testing knowledge, techniques, or processes, or in labeling, warnings or risks or hazards, or instructions for the use of such product, where such advancements were discovered subsequent to the time the product in issue was sold by the manufacturer, *shall not be admissible for any purpose other than to show a duty to warn.* [Emphasis supplied].

Following the enactment of § 13–21–404, together with §§ 13–21–401 through 405, the Colorado legislature, in our view, substantially "watered down" the impact of *Good v. A.B. Chance Co., supra,* and *Roberts v. May, supra.* Under this statutory scheme a product is not to be found defective if, at the time of its sale, it either conforms with the state of the art or complies with applicable state and federal statutes and regulations. *See,* § 13–21–403(1)(a) and (b). This legislative scheme is, at least, outcome determinative in the substantive-policy sense. As such, it must be elevated over federal Rule 407 in a diversity-based action. However, this legislative scheme was not in effect at the date of the Falcon 10 crash. It does demonstrate, however, that the substantive state law of product liability is deeply involved in legislative policy determinations. In the instant case, the rules set down in *Good* and *Roberts* controlled.

The feasibility of warning about the failure of the autopilot on the Falcon 10 airplane to disengage was not controverted. With this in mind, the trial court ruled that Exhibit 19 evidencing subsequent remedial measures would be confusing to the jury and prejudicial under Rule 403; furthermore, the court found that the relevancy and probative value of the subsequent remedial measures were low under Rule 401. The court stated that as to both the strict liability and negligence claims, Exhibits 19, 20, and 47 would be admitted only when offered to prove ownership, control or feasibility of precautionary measures if controverted. [R., App.Vol. IV, pp. 192, 193]. These rulings were reaffirmed when the court denied plaintiffs' motion for reconsideration. [R., App.Vol. IV, pp. 201–203]. The court, even though rejecting *Good v. Chance, supra,* on policy reasons under Rule 407 which the court construed as binding it to the Federal Rules of Evidence "even in diversity cases", nevertheless *expressly* excluded the evidence "under 403 because of unfair prejudice and jury confusion, and balancing that we have endeavored to do under Rule 403." [R., App.Vol. IV, pp. 202, 203]. The trial court's balancing process carefully observed that because this case involved *both* claims in negligence and strict product liability, coupled with the evidence that Mountain Bell and the pilot crew of the Falcon 10 which crashed had prior *actual warning* of the danger involved in manual flight while the autopilot is engaged, Rule 403 considerations of prejudice, and jury confusion substantially outweighed the probative value of Exhibit 19 and warranted its exclusion. Colorado has long applied a similar rule. The sufficiency, probative effect, and weight of all evidence, and the inferences and conclusions to be drawn therefrom, are within the province of the trial court (or jury) and findings and conclusions will not be disturbed on appeal unless clearly erroneous. *Dominion Ins. Co. v. Hart,* 178 Colo. 451, 498 P.2d 1138 (1972); Rule 43, C.R.C.P., C.R.S. (1973), 7 A. The trial court must weigh the probative value of evidence against its prejudicial effect and relevancy and this involves the exercise of the trial court's discretion. *Simonton v. Continental Cas. Co.,* 32 Colo. App. 138, 507 P.2d 1132 (1973). Facts supporting only conjectural inferences have no probative value and should not be admitted in evidence. *Dolan v. Mitchell,* 179 Colo. 359, 502 P.2d 72 (1972). Rule 61, C.R.C.P., C.R.S. (1973), Vol. 7 A provides that no error in either the admission or exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any party is ground for a new trial or for setting aside a verdict or judgment unless the refusal to take such action appears to the court inconsistent with substantial justice. This is Colorado's "Harmless Error" rule. Fed.R.Evidence, Rule 103(a) blends with the above rules. It provides that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Colo.Rules of Evidence, Rule 103 (1980) is to the same effect.

We thus hold that the trial court did not abuse its discretion and did not err in denying admission of Plaintiffs' Exhibit 19 into evidence. Furthermore, we see no merit in plaintiffs' contention that the trial court erred in refusing the admission of Exhibit 19 for purposes of impeachment of defendants' pilot experts, Le Prince-Reuguet and Ronald Schwenkler. When these witnesses were cross-examined by counsel for plaintiffs, the court permitted counsel to paraphrase the language of Exhibit 19 for impeachment purposes. During cross-examination of Mr. Le Prince-Reuguet, this colloquy took place:

MR. ULLSTROM (counsel for plaintiffs):

Q. Based on your own experience, sir, as a test pilot do you not have the feeling that a refusal of the autopilot to disengage not perceived by the pilot constitutes an insidious failure which may result in a situation similar to the situation resulting from a horizontal stabilizer trim runaway?

A. That's why I say yes. That's why you use the same procedure.

Q. You agree?

A. I agree.

[R., App.Vol. VI, pp. 230, 231].

When Mr. Schwenkler testified on direct examination, he stated that in his opinion the Falcon pilot crew did not know that the autopilot was engaged when they attempted to fly manually; he stated that there were many ways for the crew to confirm that the autopilot had not disengaged. [R., App.Vol. VII, pp. 19–28]. On cross-examination, when asked whether he agreed that refusal of the autopilot to disengage on a Falcon 10 was an insidious failure, he responded "no" and thereafter he stated his disagreement with Mr. Le Prince-Reuguet that the failure to disengage should be considered a "hidden failure". [R., App.Vol. VII, pp. 39, 40]. Plaintiffs did not make further requests for the use of Exhibit 19 for impeachment of Mr. Schwenkler. This portion of the record demonstrates, in our view, that the trial court did permit plaintiffs to effectively employ the crux of Exhibit 19 for impeachment purposes and that, therefore, the plaintiffs were not unfairly prejudiced by the exclusion of the exhibit from evidence.

### VII.

We have carefully examined the balance of plaintiffs-appellants' contentions of error. We hold that they are without merit. These contentions, for the most part, challenge the trial court's denial of admission into evidence various testimony or documents. We have reviewed the record and hold that no prejudicial error was committed. The court carefully analyzed each issue and found that the probative value was outweighed by the danger of unfair prejudice, confusion of issues and misleading the jury. Further, the court correctly observed that certain tenders of evidence of other flight incidents, after the crash of Falcon 10, would constitute a mini-trial within a trial, resulting in undue delay, waste of time, and needless presentation of cumulative evidence. Rule 403; *Rigby v. Beech Aircraft Corp.,* 548 F.2d 288 (10th Cir.1977) [applying Rule 403 in a products liability action]. Furthermore, the trial court correctly found that similarity of proof of causation was lacking, citing to *Julander v. Ford Motor Co.,* 488 F.2d 839 (10th Cir.1973).

We find no merit in the contentions that the trial court erred in (1) allowing alleged prejudicial misrepresentations by defendants' counsel to go uncured, and (2) prejudicing the plaintiffs by bifurcation of the trial. With regard to plaintiffs' contention that the trial court erred in dismissing plaintiff Beverly L. Miles' punitive damages claim, we need not decide whether the trial court erred in applying the one-year statute of limitation set forth in § 13–80–104, C.R.S.1973. Section 13–21–102, C.R.S.1973 provides, in pertinent part:

> In all civil actions in which damages are assessed by a jury for a wrong done to the person ... and the injury complained of is attended by circumstances of ... a wanton and reckless disregard of the injured party's rights and feelings, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages.

Obviously, § 13–21–102 has no application in the absence of an underlying award of actual damages. *Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982). Here, the jury did not find for the plaintiffs on the issue of liability, a prerequisite for an award of damages.

Turning now to AMD's cross appeal, we hold that the trial court did not abuse its discretion in refusing to tax as costs for AMD the reasonable and necessary costs of partial daily transcripts, exhibits used at trial, travel expenses of experts and French company employees beyond one hundred miles, and depositions used but not read at trial, in total amount of $20,654.21. In addition, Falcon Jet cross appeals from the disallowance of costs of $8,310.05 and Garrett Corporation cross appeals from the denial of an award of costs in the approximate sum of $22,679.95. Defendants contend that the trial court did not give its reasons for disallowing these costs, in violation of *Delano v. Kitch,* 663 F.2d 990 (10th Cir.1981), *cert. denied,* 456 U.S. 946, 102

S.Ct. 2012, 72 L.Ed.2d 468 (1982). In *Delano* we held that because Fed.R.Civ.P. Rule 54(d) 28 U.S.C.A. provides that costs shall be allowed as a matter of course to the prevailing party unless the court directs otherwise, it is incumbent upon the trial court, should it refuse to award costs to the prevailing party, to state its reasons so that the appellate court will have a basis for judging whether the trial court acted within its discretion. In the case at bar we are not adrift. The trial court set forth adequate reasons for modification of taxation of costs in its order of February 8, 1982. [R., App.Vol. IV, pp. 153–157]. The trial court did not abuse its discretion in disallowing costs of daily transcripts in the amount of $11,817.55, photographer's fees for the preparation of Exhibits 222–25 through 31 in the amount of $949.80, negatives in the amount of $174.00, photocopies used in the juror notebooks (except those copies actually used by the jury) in the amount of $318.75, transcripts of hearings and conferences, pretrial, and other conferences, and, depositions except for those actually read into evidence. The court reaffirmed its 100-mile rule for transportation costs of witnesses and allowed costs for travel for one trip only. The trial court's order is in line with the general costs statute, 28 U.S.C. § 1920. That statute, among other things, allows fees of the court reporter for any stenographic transcript necessarily obtained "for use" in the case and fees for exemplification and copies of papers necessarily obtained "for use" in the case. The trial court's discretion with regard to what costs in the taking of depositions are reasonably necessary to the litigation will not be disturbed on appeal unless abused. We find no abuse of discretion by the trial court in modifying taxation of costs.

WE AFFIRM.

McKAY, Circuit Judge, concurring:

I concur in result and in the opinion of the court except to the extent that it purports to resolve the difficult question of possible conflict between state and federal rules of evidence. As the court's opinion makes clear, that discussion is not necessary to our decision which properly rests on the independent ground of balancing mandated by Rule 403 and parallel state authority.